NOT FOR PUBLICATION

**RECEIVED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**APR 1 9 2006**

AT 8:30 _____
WILLIAM T. WALSH
CLERK

```
ALI EL-TAYEB

                Plaintiff,

v.                                      Civ. No. 04-2031 (MLC)

HON. ANNE E. THOMPSON,                        O P I N I O N
HON. FREDA L. WOLFSON, and
HON. JOHN W. BISSELL,

                Defendants.
```

**APPEARANCES:**
ALI EL-TAYEB
120 Popmoyland Blvd.
Apt. 412
Depford, NJ 08096

    Pro Se Plaintiff

HON. ANNE E. THOMPSON,
HON. FREDA L. WOLFSON, and
HON. JOHN W. BISSELL,

**Bassler, Senior District Judge:**

    Plaintiff Ali El-Tayeb, appearing pro se, seeks to bring this action *in forma pauperis*, pursuant to 28 U.S.C. § 1915, and moves for appointment of counsel. Having thoroughly reviewed Plaintiff's allegations, and for the reasons set forth below, the

1

Court **denies** the motion to proceed *in forma pauperis*, and pursuant to 28 U.S.C. § 1915(e)(2), **dismisses** the Complaint in its entirety.

## I. Background

Mr. El-Tayeb's relationship with the U.S. District Court for the District of New Jersey dates back several years. In August of 2001, he filed an action against Defendants State of New Jersey, Mercer County, Legal Services Project for the Elderly, Patrick N. Budd, and Susan J. Knipsel. <u>See</u> Docket Report for Case No. 3:01-cv-03973 (R. at 8-11).[1] Judge Thompson granted Mr. El-Tayeb's motion to proceed *in forma pauperis* in that action. <u>Id.</u>

In October 2001, Defendants Legal Services Project, Mr. Budd and Ms. Knipsel filed a motion for summary judgment. <u>Id.</u> The motion was scheduled for argument on December 17. In November, however, Mr. El-Tayeb filed a motion for "to conduct a pretrial [conference], to appoint counsel, for entry of default as to [defendants], for strict scrutiny test, to compel discovery by [plaintiff]." <u>Id.</u> Magistrate Judge Wolfson denied without

---

[1] The Record in this action consists of several pages of handwritten notes, including, *inter alia,* a copy of the Docket Report for Case No. 3:01-cv-03973, upon which Mr. El-Tayeb has written additional notes, and his application to proceed *in forma pauperis*. For the sake of clarity, this Opinion will refer to the Record as a whole, and not to its individual components.

2

prejudice each of those motions. Id.

On December 17, 2001, the parties appeared before Magistrate Judge Wolfson, and she consented to take each of Plaintiff's motions under advisement.[2] Id. Similarly, in a proceeding before Judge Anne E. Thompson, the Defendants' summary judgment motion was taken under advisement. Id.

On December 20, 2001, Mr. El-Tayeb filed notice of an appeal of the Magistrate Judge's order denying his motions, and on December 28, he filed a "deficient motion (no brief or motion date) for a directed verdict, to strike summary judgment motion, and to suppress defenses." Id.

On January 9, 2002, Judge Thompson issued a Memorandum and Order, which granted the summary judgment motion of Defendants Legal Services Project, Budd, and Knipsel, dismissed *sua sponte* Defendant State of New Jersey and the appeal of the Magistrate decision, and "dismissing all other motions filed in this action and closing the case." Id.

The Docket Report indicates that Mr. El-Tayeb appeared before the Magistrate Judge as scheduled, on January 22, 2002. Although the case had already been closed, Mr. El-Tayeb continued to file motions and other papers with the Court. Id. On March

---

[2]The minutes of this proceeding were not recorded, but because the Docket Report indicates that the motions were "taken under advisement," it is reasonable to believe that Mr. El-Tayeb renewed each of his motions that had been denied without prejudice.

25, 2002, Judge Thompson signed an Order precluding Plaintiff from filing any additional pleadings without permission from the Court. Id. Through July of 2003, Mr. El-Tayeb continually tried to file additional papers, and each time, the papers were returned by the Clerk. Id. Finally, On July 15, 2003, Chief Judge John W. Bissell signed an Order indicating that Judge Thompson's March 25 Order remained in force, and that the action remained closed. Id.

Mr. El-Tayeb subsequently filed this action. He contends that Magistrate Judge Wolfson and Judge Thompson engaged in a conspiracy to violate his civil rights, including his right to due process under the 14th Amendment. He alleges that Magistrate Judge Wolfson violated Local Civil Rules 16.1 and 26.1 by failing to hold a pretrial conference and refusing to allow Mr. El-Tayeb to conduct discovery (R. at 3, 9); that the District Court established a "pattern of deprivation" in denying his request for pro bono counsel on three occasions (R. at 4); and that the Magistrate Judge made a "perjured statement" when she filed Mr. El-Tayeb's Notice of Appeal of her decision of December 20, 2001 (R. at 4, 10).

Mr. El-Tayeb also alleges that Judge Thompson committed "judicial error" by willfully violating his right to due process (R. at 5). This alleged violation appears to stem from Judge Thompson's Order granting the Defendants' motion for summary

4

judgment, dismissing Plaintiff's other motions, and precluding him from filing any additional pleadings in the matter without permission of the District Court. (R. at 10.) Mr. El-Tayeb further contends that Judge Thompson has a "personal prejudice" against him, which he believes may be rooted in a bias against his religion. (R. at 11.) He does not, however, provide any reasons for this belief.

Finally, Mr. El-Tayeb contends that Chief Judge Bissell should be found vicariously liable for the alleged misconduct of Judges Thompson and Wolfson. (R. at 11.)

Mr. El-Tayeb purports to bring his action pursuant to 42 U.S.C. § 1985 (conspiracy to interfere with civil rights) (R. at 2), but his claim for damages[3] as a remedy for the alleged deprivation of civil rights by state actors appears to fall more squarely under 42 U.S.C. § 1983.[4] This Court therefore has

---

[3] In addition to "deliverance from injustice or wrongs from the court ... redress [and] help," Mr. El-Tayeb seeks "remedy ... judgment award ... punitive damages, etc." (R. at 16.)

[4] 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be

5

jurisdiction pursuant to 42 U.S.C. §§ 1331 and 1343.[5]

## II. Analysis

### A. Standard of Review

Mr. El-Tayeb's application to proceed *in forma pauperis* was neither granted nor denied. Docket Report for Case No. 3:04-cv-02031. He filed an appeal with the Third Circuit Court of Appeals before this Court handed down a decision on his application, and Judge Mary L. Cooper signed an Order staying action pending that appeal. Id. The Third Circuit granted his motion to proceed but dismissed his appeal. Id. This Court must

---

granted unless a declaratory decree was violated or declaratory relief was unavailable.

[5]It is also worth noting that this matter was originally filed in the Trenton vicinage of the District of New Jersey and assigned to Judge Cooper. It is before this Court pursuant to the 1994 Standing Order of Chief Judge John F. Gerry, under which "suits brought and filed against judges of the ... District of New Jersey shall be assigned to a judicial officer in a vicinage other than the vicinage where the defendant judge maintains his or her permanent duty station." Court's Order of Jan. 13, 1994.
The Order further provides that if the assignee judge determines the matter to be frivolous or subject to judicial immunity, the assignee judge need not recuse. Id. As this Opinion will show, judicial immunity is plainly applicable to the claims in this case.
Newark is an appropriate vicinage for this action, as the Defendant Judges are stationed in Trenton. Although Chief Judge Bissell was stationed in Newark (he has subsequently retired), assignment to this Court was proper because the complaint fails to state any substantive claims against the Chief Judge. See July 6, 2004 Mem. to Chief Judge Bissell, and Aug. 6, 2004 Mem. from Chief Judge Bissell to Judge Bassler.

therefore first address the *in forma pauperis* application.

The Court is obligated to dismiss a complaint brought pursuant to 28 U.S.C. § 1915 if it determines that "the allegation of poverty is untrue," or the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915 (2005). There is no evidence casting doubt upon Mr. El-Tayeb's allegation of poverty, and so the Court proceeds to the second part of the analysis.

A § 1915 complaint is deemed frivolous "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). For the reasons discussed below, Mr. El-Tayeb's vicarious liability complaint as to Chief Judge Bissell contains no basis in law or in fact, and will therefore be dismissed. His claim as to Judges Wolfson and Thompson lacks a basis in law and fact, and furthermore seeks monetary relief against defendants who are immune from such relief. Those claims will therefore also be dismissed pursuant to § 1915(e)(2)(B)(i) and (ii).

### B. § 1983 and *Respondeat Superior*: The Claim against Chief Judge Bissell

The sole allegation that Mr. El-Tayeb makes against Chief Judge Bissell is that he failed to prevent the alleged misconduct

7

of Judges Thompson and Wolfson. (R. at 11.) Mr. El-Tayeb does not claim that Judge Bissell was responsible in any other way for his alleged injury. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976) ("in § 1983 suits liability may not be imposed on the traditional standards of *respondeat superior*.") (italics added). As vicarious liability is an insufficient basis for a § 1983 claim, and as the sole basis for the Chief Judge's purported liability in this action lies in the theory of *respondeat superior*, the complaint is frivolous and must be dismissed as to this Defendant. 28 U.S.C. § 1915(2)(B)(ii).

### C. Judicial Immunity and the Claims against Judges Thompson and Wolfson

"[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 80 U.S. 335, 347 (1872). Courts have therefore held that judges are not liable in civil actions, "even when such acts are in excess of their

8

jurisdiction, and are alleged to have been done maliciously or corruptly." Id. at 351. The doctrine of judicial immunity has been determined to be "applicable in suits under § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, for the legislative record gave no indication that Congress intended to abolish this long-established principle." Stump v. Sparkman, 435 U.S. 349, 355-56 (1978) (citing Pierson v. Ray, 386 U.S. 547 (1967). See also Gallas v. Supreme Court, 211 F.3d 760, 768 (3d Cir. 2000) ("The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts.").

This immunity, however, does not extend indefinitely. Rather, it is "justified and defined by the *functions* it protects and serves." Forrester v. White, 484 U.S. 219, 227 (1988). The Supreme Court precedents analyzing the application of the immunity "suggest an intelligible distinction between *judicial* acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." Id. (Emphasis added). Immunity thus does not extend to actions that are not within the judge's official capacity, nor to those actions that are taken in the absence of all jurisdiction. Mireles v. Waco, 502 U.S. 9, 11-12 (1991).

To determine whether an act is "judicial," the Court looks to whether the act performed by the judge "is a function normally performed by a judge, and to the expectations of the parties,

9

i.e., whether they dealt with the judge in his judicial capacity." Gallas, 211 F.3d at 768-69 (quoting Stump, 435 U.S. at 362). Next, in inquiring as to whether an act was performed in the absence of all jurisdiction, and therefore not subject to immunity, the Court must distinguish those acts that were merely performed "in excess of jurisdiction," to which the immunity extends. Gallas, 211 F.3d at 769.

Here, the actions upon which Mr. El-Tayeb bases his claims are clearly the types of actions performed by judges in their judicial capacities. The Magistrate Judge's decisions not to hold a pretrial conference and not to allow Mr. El-Tayeb to commence discovery, were well within the realm of her judicial function. See D.N.J. L.Civ.R. §§ 16.1(a)[6] and 37.1(b)[7] (2005). Similarly, the denial or granting of a pro se civil plaintiff's

---

[6] Local Civil Rule 16.1(a) provides, in relevant part: "(1) Conferences . . . shall be conducted, in the first instance, by the Magistrate Judge, unless the Judge otherwise directs. The initial conference shall be scheduled within 60 days of filing of an initial answer, *unless deferred by the Magistrate Judge due to the pendency of a dispositive or other motion*." (Emphasis added).

[7] Local Civil Rule 37.1(b) provides in relevant part: "(3) . . . . No reply papers shall be allowed except with the permission of the Magistrate Judge. Unless oral argument is to be heard under L.Civ.R. 37.1(b)(4), the Magistrate Judge may decide the motion on the basis of the papers received."
Subsection (b)(4) provides: "No oral argument shall be heard except as permitted expressly by the Magistrate Judge assigned to hear the motion. . . . Oral argument may be conducted in open court or by telephone conference, at the discretion of the Magistrate Judge."

Case 3:04-cv-02031-MLC-TJB   Document 7   Filed 04/19/06   Page 11 of 13 PageID: 87

request for pro bono counsel is a decision that is made by the judge assigned to the case. <u>See</u> R. at 17, Application for Pro Bono Counsel ("If you file an Application for Pro Bono Counsel, the judge assigned to your case will determine whether to grant your application."); <u>see also</u> 28 U.S.C. §1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel").

As for the second part of the inquiry, it is clear that the Magistrate Judge's action was not performed "in the clear absence of all jurisdiction," <u>Bradley</u>, 80 U.S. at 351, as her jurisdiction over these matters is conferred by Rule 72 of the Federal Rules of Civil Procedure, as well as by Local Civil Rule 72.1. <u>See</u> Fed. R. Civ. P. 72 and D.N.J. L.Civ.R. §72.1. Judicial immunity therefore applies to Magistrate Judge Wolfson's actions, and the complaint is dismissed as to her.

Judge Thompson's decision to grant the Defendants' summary judgment motion, deny Plaintiff's motions and preclude him from filing any further papers without the Court's permission are also the types of decisions that judges must make all the time. That Mr. El-Tayeb disagreed with her decision does not render the Judge liable in a civil action. <u>See</u> <u>Mireles</u>, 502 U.S. at 12-13 ("If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error'") (quoting <u>Stump</u>, 435 U.S. at 356). The allegation of

11

bias is insufficient to challenge the analysis, as the immunity applies, "even when such acts . . . are alleged to have been done maliciously or corruptly." <u>Stump</u>, 435 U.S. at 356.

Judge Thompson's action were clearly not undertaken in the absence of jurisdiction, as it is the duty of a judge to rule on the motions brought before her. "[I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." <u>Id.</u> at 357 (citing <u>Bradley</u>, 80 U.S. at 352). Here, Judge Thompson did nothing more than issue decisions on the motions before her and close the case. She acted neither in the absence of jurisdiction, nor in excess of it. The complaint as to her is therefore also dismissed.

### III. Conclusion

As the claim against Chief Judge Bissell rests entirely on the theory of *respondeat superior*, and as there cannot be § 1983 liability on that theory, the Complaint as to Judge Bissell is **dismissed** as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(i). The other two named Defendants in this action are entitled to absolute judicial immunity. The Complaint thus seeks monetary

12

relief against defendants who are immune from such relief, and as such, is **dismissed**, *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2)(iii).  An appropriate Order follows.


                                        /S/ WILLIAM G. BASSLER
                                        WILLIAM G. BASSLER, U.S.S.D.J.


DATED:    April 6, 2006